CITY OF SUMMERVILLE *v.* GEORGIA POWER
COMPANY.

No. 16763.   SEPTEMBER 14, 1949.   REHEARING DENIED OCTOBER 13, 1949.

844

*Jesse M. Sellers* and *T. J. Espy Jr.,* for plaintiff.

*MacDougald, Troutman, Sams & Branch, Gilmer A. Mac-Dougald, Wright, Rogers, Magruder & Hoyt,* for defendant.

CANDLER, Justice. (After stating the foregoing facts.) ■ It is generally recognized that a franchise granted by a city council to a public-service corporation to use its streets and public places, where the city has the charter power to grant such a franchise, is a binding contract, and cannot be impaired in view of the prohibition against impairment of the obligation of contracts contained in the United States Constitution. Fletcher *v.* Peck, 10 U. S. (6 Cranch) 87 (3 L. ed. 162); State of New Jersey *v.* Wilson, 11 U. S. (7 Cranch) 164 (3 L. ed. 303); Union Light, Heat & Power Co. *v.* Fort Thomas, 215 Ky. 168 (285 S. W. 228). The obligation resting upon the public utility to comply with the terms and conditions of the grant or franchise is generally considered a sufficient consideration to support such a contract. 23 Am. Jur. 718, § 6, and cit. In *Williams* v. *West Point,* 68 *Ga.* 816, this court held: "A municipal corporation may bind itself by, and cannot abrogate any contract which it has the right to make under its charter." See also 43 C. J. 563, § 888. Under the express terms of the charter, the council of the City of Summerville had the power to grant franchises to public utilities, and this being true, the franchise in the present case is not subject to the attack that it is void as being in violation of Code § 69-202, which provides that "One council may not by an ordinance bind itself or its successors so as to prevent free legislation in matters of municipal government."

■ The charter of the City of Summerville (Ga. L. 1909, p. 1376, § 19) provides that "The City Council shall have the right to grant franchises for the use of their streets for the erection of . . electric light lines . . and for other public utilities," upon the condition that certain prior publications of the application for such franchise be made. The charter also provides that "The City Council of Summerville may prohibit all persons, firms, and corporations to whom they do not grant a franchise from using said streets for erection of poles, wires or encroachments of any nature." Pursuant to this charter authority, the City of Summerville, on June 13, 1924, granted permission to Georgia Railway & Power Company, the defendant's predecessor, to occupy and use its public streets "within the present and future limits of the said city as from time to time the said company, its successors, lessees, and assigns, may deem proper or necessary," for the purpose of constructing and maintaining such electric-distribution system.

It was admitted by the general demurrer that the required publication of the application for the franchise was not made by the city in the prescribed manner. Even though the charter power of the City of Summerville to grant franchises to public utilities is unlimited and unrestricted, the franchise in the present case does not purport to be exclusive, nor does it seek to grant a perpetual right in the defendant, as contended by the plaintiff in error. See, in this connection, 26 C. J. 1040, § 98, 37 C. J. S. 182, § 26 (2); 23 Am. Jur. 733, § 25.

Without deciding whether Georgia Railway & Power Company was required in the first instance to obtain the prior consent and permission of the City of Summerville to use its streets for the purpose of distributing electric current, the city, by the express terms of its charter, was vested with the power to grant such a franchise, and the action by the city council was, therefore, not illegal or ultra vires. In these circumstances, the doctrine of equitable estoppel may be invoked to estop the city from denying the validity of the franchise because it failed to comply with certain charter precedent conditions. In *City of Jefferson* v. *Holder*, 195 *Ga.* 346, 355 (24 S. E. 2d, 187), this court quoted with approval from 19 Am. Jur. 820, § 168, as follows: "The doctrine of estoppel is not applied as freely against a municipal

corporation as against an individual. Municipalities act in both a governmental and a proprietary capacity, and an estoppel is not asserted if such will embarrass a municipality in its capacity as a governing body or operate to prevent it from exercising its police power. . . While a municipality is not estopped to deny the validity of a contract wholly beyond its powers, it may be estopped by the exercise of contractual powers legally vested in it, and even by the exercise of governmental powers, to prevent manifest injustice and wrongs to private persons, where the restraint placed upon a municipality to accomplish that purpose does not interfere with the exercise of governmental powers of the municipality. A municipality is subject to the rules of estoppel in those cases wherein equity and justice require their application, and may be estopped under certain circumstances by its act and conduct." In 21 C. J. 1195, § 195, the rule is stated as follows: "Although a municipality or other governmental agency cannot be estopped by its ultra vires acts, there is nevertheless a broad distinction to be observed between an irregular exercise of a granted power, and the total absence or want of power, and the rule is that it may be estopped, as right and justice may require, where the act or contract relied on to create the estoppel was within its corporate powers, although the method of exercising the power was irregular or unauthorized." This rule has been consistently stated by text-writers and followed in the decisions from other jurisdictions. 3 Dillon, Mun. Corp. (5th ed.) 1242; 4 McQuillin, Mun. Corp., § 1687; 31 C. J. S. 413, § 141; State ex rel. Shartel &c. v. Missouri Utilities Co., 331 Mo. 337 (53 S. W. 2d, 394, 89 A. L. R. 607); State ex inf. McKittrick v. Missouri Utilities Co., 339 Mo. 385 (96 S. W. 2d, 607, 106 A. L. R. 1169, 1183); People, ex rel. v. Union Gas &c. Co., 260 Ill. 392 (103 N. E. 245); Marmet Gas Co. v. Marmet, 102 W.Va. 605 (135 S. E. 839); Natural Gas &c. Corp. v. Norphlet Gas &c. Co., 173 Ark. 174 (294 S. W. 52); Beadles v. Smyser, 209 U. S. 393 (28 Sup. Ct. 522, 52 L. ed. 849, 854). For annotation and collection of cases on "Estoppel of municipality to deny that it gave its consent to street franchise," see 7 A. L. R. 1248, 89 A. L. R. 619. See also City of Atlanta v. Gate City Gas Light Co., 71 Ga. 106; Langley v. Augusta, 118 Ga. 590 (45 S. E. 486, 98 Am. St. R. 133).

The City of Summerville had the legal right under its charter to grant permission to do just what was done in constructing and maintaining an electric-distribution system. It had the general power, though the manner and conditions of its exercise were prescribed by the charter. The city was also vested with the power to prevent any public utility from using its public streets without first obtaining a legal and valid franchise. The city exercised its authority under the general power by granting its permission to the public utility to use its streets, and then for a period of over 20 years acquiesced in such use without any legal objection, or the exercise of its granted right to compel a cessation of the encroachment because of the absence of a legal franchise. On the faith that permission had been legally given, great expenditures were made in the construction and maintenance of the distribution system; and now the city, after acquiescing in that use and after receiving the benefits therefrom, under the principles of equitable estoppel will not be heard to say that the conditions necessary to its grant of such permission did not exist.

Accordingly, the petition failed to state a cause of action, and the trial court did not err in dismissing it on general demurrer.

*Judgment affirmed. All the Justices concur, except Almand, J., who is disqualified.*