A03A0152. BUCKHORN VENTURES, LLC v. FORSYTH COUNTY et al.
(585 SE2d 229)

MIKELL, Judge.

Buckhorn Ventures, LLC ("Buckhorn") sued Forsyth County (the "County") and its board of commissioners (the "Board"), seeking to hold them in contempt for their failure to comply with a court order that incorporated a 1992 settlement agreement. In addition, Buckhorn requested a declaration of its rights under that agreement and an injunction to compel the defendants to comply with the agreement. The trial court denied the requested relief, concluding, in part, that the 1992 agreement was void. Buckhorn appeals, and we affirm.

In 1985, the County, the Board, and Sunbelt Sand & Gravel, Ltd. ("Sunbelt") entered into a settlement agreement to resolve pending land use litigation (hereinafter referred to as the "1985 Settlement Agreement"). The 1985 Settlement Agreement implemented various restrictions on Sunbelt's mining operations, including that there be no blasting on the property. After learning that Buckhorn Minerals, Inc. ("Buckhorn Minerals"), on behalf of Sunbelt, intended to commence blasting on the property on February 9, 1990, the County filed a petition for injunction and temporary restraining order against Sunbelt d/b/a Buckhorn Minerals. On May 27, 1992, the parties entered into a settlement agreement (the "1992 Settlement Agreement"),[1] which expressly superseded the 1985 Settlement Agreement and was incorporated into final order of the court on May 29, 1992 (hereinafter referred to as the "1992 Order").

---

[1] There were several other parties to the 1992 Settlement Agreement who are not involved in this appeal.

In pertinent part, the 1992 Settlement Agreement provided that:

2. This Agreement shall be effective in perpetuity, subject to any overriding state statute or any future rezoning that permits additional uses on the Property. In no event shall later amendments of the Zoning Ordinances further abridge the activities allowed on the Property or place further restrictions upon the Owner/Operators' activities on the Property, except as may be required by applicable state law. . . . 4. It is the intent of the parties that the Property may be used to conduct all mining or mining-related activities that are currently taking place on any A-1 district in connection with any mining operations conducted in Forsyth County by virtue of any "grandfather" or non-conforming use status obtained or conferred prior to the effective deletion if any, by Forsyth County of "mining operations" as a permitted use in A-1 district, provided that the mining-related activities were commenced after December 10, 1979. Notwithstanding the foregoing sentence, the parties stipulate and agree, in order to avoid future controversy about the full scope of uses permitted on the Property, that only the following uses shall be allowed, barring some future rezoning: (i) All uses permitted in land zoned A-1, so long as the portion of the property in question remains zoned A-1; (ii) Any type of mining operation. . . . No rezoning is required for such operations but regular land disturbance or building permits required for such operations are required to commence such activities. . . . 11. This Agreement shall apply to, inure to the benefit of and be binding upon and enforceable against the parties hereto and their respective successors, heirs and assigns.[2]

Buckhorn purchased the property in 1998 and asked the County in 1999 whether it considered the 1992 Settlement Agreement to be binding and enforceable. The County replied that it considered the execution of the 1992 Settlement Agreement to be an ultra vires act, and therefore the agreement was void ab initio. In response thereto, Buckhorn filed the present action.

The trial court entered the following conclusions of law, which Buckhorn challenges as erroneous: (1) OCGA § 9-12-16 allows the attack of judgments more than three years old on the ground that

---

[2] The A-1 zoning designation authorized "sanitary landfills and dumps approved by the Board of Commissioners of Forsyth County after review with the County Health Officer and the Planning Commission."

they are void; (2) the 1992 Settlement Agreement was ultra vires because it bound the hands of future county commissioners; (3) even if valid, the 1992 Settlement Agreement could not be enforced because of overriding state law; and (4) the court could not grant the requested contempt relief because the individual commissioners were not before the court. We review conclusions of law de novo.[3]

1. Buckhorn contends that pursuant to OCGA § 9-11-60, the 1992 Order could not be attacked because it was more than three years old. In support of its position, Buckhorn relies on *Murphy v. Murphy*,[4] in which the Supreme Court reconciled subsections (a) and (f) of OCGA § 9-11-60.[5] Subsection (a) provides that "[a] judgment void on its face may be attacked in any court by any person. In all other instances, judgments shall be subject to attack only by a direct proceeding brought for that purpose in one of the methods prescribed in this Code section." Subsection (f) provides, in relevant part, that "all motions to set aside judgments shall be brought within three years from entry of the judgment complained of." The Court held that under subsection (a), a judgment that is void on its face is one in which the trial court lacked either personal or subject matter jurisdiction,[6] and that subsection (f) established a three-year period of limitation for the attack of a judgment by a motion to set aside, except where the judgment was void for lack of jurisdiction, in which case, the judgment can be attacked at any time.[7] As the *Murphy* majority did not discuss OCGA § 9-12-16,[8] it follows that it is inapposite.

In this case, the trial court relied on OCGA § 9-12-16, which provides that "[t]he judgment of a court having no jurisdiction of the person or the subject matter *or which is void for any other cause* is a mere nullity and may be so held in any court when it becomes material to the interest of the parties to consider it."[9] Our appellate courts have utilized OCGA § 9-12-16 to find judgments void for causes other than the lack of jurisdiction. In *Adams v. Payne*,[10] our Supreme Court utilized OCGA § 9-12-16's predecessor statute (Code § 110-709) to reverse a judgment as void because the judge who entered it was not

---

[3] *CIBA Vision Corp. v. Jackson*, 248 Ga. App. 688, 689 (548 SE2d 431) (2001).

[4] 263 Ga. 280 (430 SE2d 749) (1993).

[5] Id. at 282.

[6] Id. at 282.

[7] Id. at 282-283.

[8] In her dissent, however, Justice Hunstein commented that OCGA § 9-12-16 was not repealed by the Civil Practice Act. Id. at 285, n. 3.

[9] (Emphasis supplied.)

[10] 219 Ga. 638 (135 SE2d 423) (1964) (implicitly overruled on other grounds in *Troncone v. Troncone*, 261 Ga. 662 (3) (409 SE2d 516) (1991)); *Bennett v. Jones*, 218 Ga. App. 714 (1) (463 SE2d 158) (1995).

authorized to preside.[11] The Court held that "[a] void judgment is in reality no judgment at all. It is a mere nullity. . . . When this court discovers from the record that a judgment brought here for review is void for any reason, it will of its own motion reverse it."[12] In *Ga. Ports Auth. v. Hutchinson*,[13] we utilized OCGA § 9-12-16 to strike an award as void because it was impermissible as a matter of law.[14] Accordingly, we agree with the trial court's conclusion that OCGA § 9-12-16 confers upon it the authority to nullify a void order at any time.

2. The trial court concluded that the 1992 Settlement Agreement was void as an ultra vires act because it bound the hands of future county commissioners. We agree. In pertinent part, the agreement provided: "This Agreement shall be effective in perpetuity. . . . In no event shall later amendments of the Zoning Ordinances further abridge the activities allowed on the Property or place further restrictions upon the Owner/Operators' activities." In other words, the agreement bound forever future Forsyth County commissioners from changing the zoning designation of the subject property to prohibit or otherwise restrict the use that was the subject matter of the agreement. OCGA § 36-30-3 (a) provides that "[o]ne council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government."[15] In *Screws v. City of Atlanta*,[16] our Supreme Court extended this rule to contracts entered into by a municipal council,[17] and in *Madden v. Bellew*,[18] to county councils as well.[19]

Buckhorn incorrectly argues that *City of Centerville v. City of Warner Robins*[20] demonstrates that OCGA § 36-30-3 has no application to consent orders.[21] In that case, the cities of Centerville and Warner Robins entered a consent agreement, which defined the areas

---

[11] *Adams v. Payne*, supra at 640. Accord *Dominguez v. Enterprise Leasing Co.*, 197 Ga. App. 664 (399 SE2d 269) (1990).

[12] (Citations and punctuation omitted.) *Adams v. Payne*, supra at 639-640. Accord *Troup County Bd. of Commrs. v. Public Finance Corp.*, 109 Ga. App. 547 (1) (136 SE2d 509) (1964).

[13] 209 Ga. App. 726 (434 SE2d 791) (1993).

[14] Id. at 730 (13) (a).

[15] See also *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980) ("A contract which restricts governmental or legislative functions of a city council has been traditionally held to be a nullity, ultra vires and void.").

[16] 189 Ga. 839 (8 SE2d 16) (1940) (lease agreement that obligated the city to provide water free of charge during the 25-year term of the lease was held ultra vires and void as the power to fix water rates is legislative in nature).

[17] Id. at 839 (2). See also *Ga. Presbyterian Homes v. City of Decatur*, 165 Ga. App. 395, 397 (299 SE2d 900) (1983) (agreement considered void as an ultra vires act because its effect bound future city commissions indefinitely).

[18] 260 Ga. 530 (397 SE2d 687) (1990).

[19] Id. at 531 (1).

[20] 270 Ga. 183 (508 SE2d 161) (1998).

[21] Appellant's brief, p. 8.

to which each city would provide water and sewer services and estopped both cities from attempting to annex property within the water or sewer service area of the other.[22] *Centerville* does not stand for the proposition asserted by Buckhorn. Moreover, *Centerville* is not instructive here because it applies to reciprocal contracts between municipalities. *Brown*,[23] however, is instructive. In *Brown*, city employees filed a class action suit against the City of East Point to require it to comply with an ordinance adopted by the previous city council to implement pay raises. The Supreme Court held that Code Ann. § 69-202 (later redesignated as OCGA § 36-30-3) applied and declared the ordinance ultra vires and void because it bound the hands of future councils on a legislative matter.[24]

While we strongly encourage parties to enter contracts and to resolve disputes through settlement agreements, consent orders, and the like, we recognize that in this area of the law, there is an innate conflict between entering binding contracts and preserving the ability to govern. "It is fundamental that rezoning is legislative in nature and that one county commission cannot deprive or restrict a succeeding commission in the exercise of its legislative power by the device of entering into a contract or agreement purporting to limit the authority of the county commission to legislate in this regard."[25] A fortiori, the settlement agreement in this case, which restricts the Board's ability to decide land use planning in perpetuity, is prohibited by OCGA § 36-30-3. However, we do not hold, as a matter of law, that the 1992 Settlement Agreement was void ab initio,[26] only that it was an ultra vires act because it bound the hands of future councils regarding land use decisions for the subject property.

3. Based on our decision in Division 2, we need not address Buckhorn's remaining enumerations of error.

*Judgment affirmed. Johnson, P. J., and Eldridge, J., concur.*

DECIDED JULY 14, 2003.

*Alston & Bird, Peter M. Degnan, Harold Buckley, Jr.*, for appellant.

---

[22] 270 Ga. 183.

[23] Supra.

[24] Id. at 146.

[25] *Barton v. Atkinson*, 228 Ga. 733, 744 (3) (187 SE2d 835) (1972). Accord *Hall Paving Co. v. Hall County*, 237 Ga. 14, 16 (226 SE2d 728) (1976).

[26] Compare *DeKalb County v. Ga. Paperstock Co.*, 226 Ga. 369, 371 (3) (174 SE2d 884) (1970) (contract between the county and a private corporation was enforceable against the council that executed the contract but was not enforceable beyond the year it was entered without continued board approval or against subsequent councils).

*Banks, Stubbs, Neville & Cunat, Robert S. Stubbs III, Jarrard & Davis, Kenneth E. Jarrard, Mitchell M. McKinney*, for appellees.